373 So.2d 145 (1979)
STATE of Louisiana
v.
Webster SHY.
No. 63832.
Supreme Court of Louisiana.
June 25, 1979.
Rehearing Denied July 27, 1979.
*146 Arthur L. Harris, Sr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., George Mustakas, II, Abbott J. Reeves, Asst. Dist. Attys., Gretna, for plaintiff-appellee.
CALOGERO, Justice.
Webster Shy was approached at New Orleans International Airport by two Jefferson Parish Sheriff's deputies who identified, themselves, then asked for his identification. Asked by Shy why they had stopped him, one officer informed him that he was suspected of possibly carrying narcotics. Shy disclaimed possession of any such substance. Thereupon one officer asked Shy if he would mind permitting them to look inside the piece of hand luggage he carried. Shy responded that he had nothing to hide and stated the officers could look "in anything you want." The officers then requested that Shy accompany them to the airport office, where he placed the luggage on the table, opened it, stood back and invited the officers' inspection. The deputies found two amber glass bottles containing phencyclidine wrapped in a towel. Shy was arrested and a prosecution for possession of phencyclidine with intent to distribute (R.S. 40:967) ensued. An unfavorable ruling on a motion to suppress earlier taken under advisement by the court was announced on the date trial was to commence. The testimony of only that one state witness, Officer Schwabe, comprised the hearing on the motion to suppress; the defendant neither testified, nor presented other defense witnesses at the hearing on the motion. After the trial court announced its ruling Shy withdrew his former plea of not guilty and entered a guilty plea conditioned upon his right to appeal the court's denial of the motion to suppress.[1] We review only that ruling on this appeal.
On February 6, 1978, at about 11:00 A.M., Officer Schwabe of the Jefferson Parish Sheriff's Office was contacted by a Los Angeles Police Department officer on duty at the Los Angeles airport. The Los Angeles policeman advised Schwabe that he had observed at the Los Angeles Airport a black male, by the name of Shy, acting in a nervous and apprehensive manner when he purchased with small bills a one-way ticket to New Orleans. These characteristics prompted a suspicion that Shy may have been transporting narcotics. The Los Angeles Officer described Shy in detail and told Officer Schwabe that Shy was carrying only one small piece of hand luggage; had left New Orleans on Sunday night, February 5, 1978; had been scheduled to return to New Orleans from Los Angeles on the morning of February 6, 1978, just a few hours after his Los Angeles arrival; had apparently missed his planned return flight and would be returning to New Orleans on a designated afternoon flight. Officer Schwabe was also told that while checking his bag, Shy talked with an unknown man who likewise continually looked around, appearing nervous and apprehensive.
Upon receiving the information from the Los Angeles officer, Officer Schwabe ran a record check of the name given to him and learned that one Webster Shy whose address was given as Hollygrove Street in New Orleans, was then on probation for a heroin possession conviction; the physical description of Webster Shy carried by the crime computer was similar to that given by the Los Angeles officer. These events prompted Officer Schwabe to call for another officer to assist in surveillance of the arrival flight. When the awaited plane landed, the officers observed a man deplane who met the description given by the Los Angeles police officer. Defendant was followed by the Jefferson officers as he walked slowly down the concourse, letting his fellow passengers pass him by; as he walked he continually looked around, stopped and looked over his shoulder. Arriving near the airport gift store Shy stopped and asked directions of a person, who pointed toward the lobby. Shy proceeded toward the lobby, then stopped, turned *147 around and walked as if to enter the gift shop. He then stopped again, turned, and looked down the concourse, before taking the stairs to the baggage area where he retrieved one small piece of hand luggage. In possession of this bag, Shy proceeded toward the cab stand, but stopped before he arrived where it was located, turned around, and walked back toward the stairs leading up to the lobby. At this time the Jefferson officers approached him, and there transpired the events related in the outset paragraph of this opinion.
On this appeal, defendant conceives the legality of the police-initiated encounter to be the key issue in this case. The state urges that the crucial issue is the consent to search given by Shy. Both elements are critical to a proper determination of the case.
The mere fact that a defendant's behavior while under surveillance at the airport correlates with various elements of a drug courier profile does not by itself provide reasonable cause to stop and detain him for questioning. State v. Brown, 370 So.2d 547 (La.1979). However, the observation of those characteristics may be considered along with other factors known to the surveilling officer in determining whether the requisite reasonable cause to stop and detain a subject exists. State v. Brown, supra. In the instant case, in addition to personally observing behavior which the officer judged to be consistent with that often displayed by drug transporters, the Jefferson Parish officers knew from the computer check that a "Webster Shy", with a New Orleans address, had a prior narcotics conviction and physical characteristics compatible with the suspect, and had been told that the suspect had given the name "Shy" in Los Angeles. They were thus certain that the man under surveillance had prior narcotics involvement. But the right to effect a temporary detention for investigatory purposes exists only with respect to persons whom the detaining officer has reasonable cause to believe is committing, has committed, or is about to commit a crime and sufficiency of the officer's cause depends on whether he has adequate articulable knowledge of particular facts, enough to warrant infringement upon the individual's constitutional right to be left alone. State v. Wilson, 366 So.2d 1328 (La.1978).
In the instant case we determine that the knowledge possessed by Officer Schwabe, even considered with his observation of defendant's behavior and the report of similar behavior at the Los Angeles Airport, did not give the officers reasonable cause to effect a temporary detention of Webster Shy. Unlike in State v. Brown, supra, we are not confronted with a situation where a confidential informant or some other person affirmatively represented that the subject was in possession of an illegal substance. In the instant case, the officers did not have an adequate basis for a reasonable belief that Shy was engaged in any criminal activity at the time they encountered him. Therefore, were this case to depend on the legality of a temporary detention, the defendant would have to prevail.
However, police officers do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with a citizen. The mere fact that the police approach a citizen and address him does not compel that citizen to respond to the inquiries or comply with their requests; legally, nothing prevents his choosing not to answer and walking away. State v. Brown, supra (Dixon, J., concurring). Insofar as the circumstances in the instant case are revealed by the record, they closely parallel those related in the Brown concurring opinion just cited. From the record it appears that the defendant was not detained against his will before the phencyclidine was found in his luggage, during a search to which defendant consent. The record does not indicate other than that defendant, under non-coercive circumstances, chose to respond to the officers' inquiries. Officer Schwabe's uncontroverted testimony was that after he and his partner told of their suspicions the defendant denied possession of narcotics. The officers then asked permission to search and defendant gave it.
*148 While it appears from statements he made during cross-examination by defense counsel that the testifying officer, Schwabe, was prepared to effect a temporary detention of Shy had he not elected to respond to the officer's inquiries[2] it also appears that this intent of Schwabe's was in no way communicated to the defendant. The record consists entirely of the testimony of state's witness, Schwabe, whose account was offered to satisfy the state's burden of proving that there existed a valid exception to the warrant requirement, consent. See State v. LaRue, 368 So.2d 1048 (La.1979). No involuntary detention is evident; it does not appear that the consent to search which defendant gave was other than free and voluntary. We therefore conclude that the uncontroverted testimony of the state's witness satisfies its burden of establishing a valid consent to the search.
In view of our finding that the record establishes a free and voluntary consent to search, the trial court did not err in denying the defendant's motion to suppress.

Decree
For the reasons stated hereinabove, the defendant's conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.
SUMMERS, C. J., concurs. I do not agree that State v. Brown, No. 63,025, 370 So.2d 547, is a decision this court should rely upon.
DENNIS, J., dissents and will assign reasons.
DENNIS, Justice, dissenting.
I respectfully dissent.
The record does not reflect that the police officers had a reasonable basis to detain the defendant at the airport. In State v. Matthews, 366 So.2d 1348 (La.1978), and State v. Washington, 364 So.2d 958 (La.1978), we held that the "suspicious activity" such as that noted by the majority opinion in this case did not give rise to a reasonable suspicion that criminal activity was afoot inasmuch as the defendant's actions were equally consistent with innocent behavior. It is difficult to see how such behavior can acquire more probative value because of the fact that it was noted by an officer in Los Angeles and reported to the Jefferson Parish officers by telephone.
The only distinction between the present case and Matthews and Washington is that the officers in the present case were able to determine that the suspect was on probation for a prior drug offense. This information did not justify the police officers in approaching the defendant "under circumstances that make it seem that some form of detention is imminent." State v. Saia, 302 So.2d 869, 873 (La.1974). The detention in the present case impermissably infringed on the suspect's right to be free from governmental interference. Id. 873.
The need for the safeguards set forth in Washington, Matthews and Saia, is evidenced by the facts of this case. Once the confrontation was forced by the officers, it is fanciful to suppose that the defendant was free to walk away. The officers admitted in their testimony that if the defendant had attempted to leave he would have been stopped by force. If both officers and the defendant knew that the defendant would be physically restrained if he had tried to walk away, it is legalistic, but not realistic, to pretend that an ordinary citizen would be aware of or believe in, much less rely upon, the majority's shibboleth, viz., "the mere fact that the police approach a citizen and address him does not compel that citizen to respond to the inquiries or comply with their request; legally, nothing prevents his choosing not to answer and walking away." *149 It would be difficult to find in the annals of the law any instance in which a citizen had successfully exercised this right; yet, on the very day this case was decided we handed down a decision (incorrectly, I believe) in a case which is an example of what can happen to a citizen who unsuccessfully attempts to exercise his right of "choosing not to answer and walking away." State v. Grogan, 373 So.2d 1300 (La.1979).
NOTES
[1] The court imposed a sentence of three years imprisonment at hard labor.
[2] Asked by defense counsel if Shy was free to leave after his identification was learned, Schwabe testified: "He didn't ask, I really couldn't tell you." Pressed on the issue of whether Schwabe was prepared to allow Shy to leave, the officer responded, "Not at that time." On re-direct the state asked if Shy was informed he could not leave. Schwabe gave a negative reply. Then the state asked: "Did he intend to leave?" and "Did he request to leave?" To both of these questions, Schwabe responded, "No, sir."