383 So.2d 1222 (1979)
STATE of Louisiana
v.
Rene J. NEYREY.[*]
No. 64712.
Supreme Court of Louisiana.
November 12, 1979.
Concurring Opinion May 23, 1980.
*1223 Provino Mosca, Tucker & Schonekas, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Abbott J. Reeves, Harry Hardin, Asst. Dist. Attys., for plaintiff-appellee.
CALOGERO, Justice.
Rene J. Neyrey was charged with possession of cocaine with intent to distribute. (R.S. 40:967) After his motion to suppress the cocaine was denied, he pleaded guilty to the charge, but reserved the right to appeal the denial of the motion to suppress. State v. Crosby, 338 So.2d 584, (La.1976). The court sentenced the defendant to one year at hard labor, but suspended the sentence on the condition that defendant be placed on inactive probation and required to serve ninety days in parish prison. On the appeal defendant contests the trial court's ruling denying his motion to suppress evidence.
On December 14, 1978, around 1:30 a. m., Jefferson Parish Deputy Sheriff Jules Pinero received a complaint about a "suspicious person" sitting in a car in an apartment complex parking lot. Upon arrival, Mr. Rhinehart Richards, the security guard at the complex, informed the officers that the defendant had been in the car for some time with the windshield wipers on. Richards stated that the defendant was unconscious or asleep and that knocking on the windshield had failed to arouse him. Defendant did not respond when the deputy knocked on the glass, whereupon the deputy opened the car, shook the defendant awake and asked him for identification.
The defendant got out of the car, showed the officers his Louisiana State Insurance Commission card, and explained that he had been partying with friends and had fallen asleep on his way home. Deputy Pinero told the defendant to get back into his car and move it as it was blocking a doorway. While the officers were asking the security guard for his name and address, the security guard noticed that defendant's car was not moving and defendant, who was at the wheel, appeared to have his eyes closed. Deputy Pinero walked over to the car again, opened the door, and in an effort to obtain some identification with a picture on it asked the defendant to show him some additional identification, like a driver's license. The defendant got out of the car a second time. His words were slurred and he appeared intoxicated.
When defendant reached inside the left side of his sports coat for identification, a plastic bag with white powder in it fell to the ground. The deputy picked up the bag and ordered defendant to place his hands on the car. Pinero's partner then searched Neyrey and found a bulging bag containing around fifteen tablets and capsules in defendant's left pocket. After defendant was given his Miranda warning, he informed the officers that the white powder in the plastic bag was cocaine. We are concerned here only with the seizure of the cocaine, which had occurred before any arrest or search.
Essentially the defendant's first contention is that the cocaine should be suppressed as the fruit of an unlawful Terry search. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). C.Cr.P. art. 215.1(A)[1] authorizes a police officer to stop a person in a public place whom he reasonably suspects is committing or has recently committed a crime and ask that person his name, address, and an explanation of his actions. The validity of the investigatory *1224 stop depends on whether the officer has adequate articulable knowledge of particular facts, enough to warrant infringement upon the individual's constitutional right to be left alone. State v. Shy, 373 So.2d 145, (La.1979); State v. Wilson, 366 So.2d 1328 (La.1978).
In the case at bar the arresting officer testified that he had no suspicion, let alone a reasonable suspicion, that defendant Neyrey had committed a crime or was committing a crime. Therefore, the stop and subsequent seizure cannot be justified under Article 215.1(A).
However, the articulable suspicion requirement of C.Cr.P. art 215.1(A), Article I, Section 5 of the Louisiana Constitution of 1974, and the Fourth Amendment of the United States Constitution is necessary only where the stop is forcible. See Terry v. Ohio, supra; State v. Saia, 302 So.2d 869, (La.1974). Police officers do not need probable cause to arrest, or reasonable cause to detain, in order to converse with citizens. State v. Shy, supra, at 147. The fact that police approach a citizen and address him does not compel the citizen to respond to the officer. The citizen has the legal right to walk away from the encounter, or simply not to respond. State v. Shy, supra; State v. Brown, 370 So.2d 547 (La.1979). Under the circumstances of this case we do not think it was unreasonable for the officers to open the door and shake the defendant awake so that they could talk to him.
Policemen in the course of their duties initiate or respond to a wide variety of encounters, many of which are not related to the pursuit of criminalsproviding first aid, mediating disputes or just talking to citizens. Policemen may defuse arguments. They may act as good Samaritans in checking to see if someone is in trouble, sick, too drunk to care for themselves and in need of assistance.
Policemen could not perform such valuable non-prosecutorial services nor could they effectively pursue criminals if they did not initiate or respond to encounters with citizens. While unsolicited assistance, unasked for conversation, and unrequested advice are not always welcome, the Constitution provides no protection from these everyday annoyances whether the source of irritation is a policeman or a citizen.[2] The citizen's remedy in either instance is the same, decline the assistance, refuse to converse, or walk away. State v. Shy, supra.
In the case at bar the officers were called to an apartment house because a security guard complained of a "suspicious" person sitting in a car. The security guard explained that the person was sleeping or unconscious and failed to respond when the security guard knocked on the car window. The security guard was also concerned because the defendant's car was blocking the doorway to the apartment house. There was no question that the officers had the right to be on the apartment house premises.
When the officer first knocked on the window, he had no intention to arrest the defendant or to forcibly detain him. The testimony of the arresting officer and the security guard indicates that the officer wanted to make sure that the defendant was sufficiently awake to drive home safely and that the car was moved from the driveway so that it no longer blocked the apartment house door.
After the defendant did not move the car and apparently passed out again, the officers were justified in asking the defendant for better identification where the defendant had given no indication that he objected to their questioning. At no time did the defendant attempt to leave the area or request that the police not talk to him. State v. Shy, supra. He readily consented to the officers' request to get out of the car. The officers' approach did not make it seem that some form of detention was imminent. State v. Saia, supra; State v. Cook, 332 So.2d 760 (La.1976). In fact the security guard was under the impression that the officers were offering to take the defendant *1225 home. Thus, no Terry stop occurred here because the defendant was not subjected to a forcible detention. Terry v. Ohio, supra.
The other contention raised by the defense concerns what happened when the bag of cocaine fell to the ground. Defendant contends that the seizure of the cocaine did not meet the requirements of the plain view exception to the fourth amendment warrant requirement. This contention is without merit; those requirements were in fact met:
(1) A prior justification for an intrusion into a protected area;
(2) in the course of which evidence is discovered inadvertently,
(3) where it is immediately apparent without close inspection that the items are evidence or contraband,
(4) and exigent circumstances justify the police proceeding without a warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Fearn, 345 So.2d 468 (La.1977).
As discussed previously, the police officers were justified in asking the defendant to get out of the car and produce some identification. While they were standing where they had a right to be, the officers saw a bag containing white powder fall out of defendant's pocket onto the ground. The officers had no suspicion at the outset that defendant was carrying contraband and could hardly have planned for the bag to fall out of defendant's pocket, so there is no question but that the discovery was inadvertent.
The defense contends that the seizure was illegal because the arresting officer did not "immediately" recognize what the bag contained. Admittedly the officer testified on cross-examination that he did not know what the bag contained (the court might have concluded that the officer meant that he did not know the exact nature of the substance in the bag), but on redirect the officer testified that he believed the bag contained "some sort of control substance."
Finally, the officer had a right to pick up the contraband from the ground. And even if we assume that defendant's interest in his property preponderated over the officer's right to seize it under these circumstances, exigent circumstances dictated that the officer seize it at that time rather than allow defendant to reclaim it and possibly dispose of it before the officer would be able to get a search warrant.
There is no merit to defendant's assignment. The trial judge properly refused to suppress the cocaine, for it was not procured by the deputy as a consequence of an illegal search or seizure.

Decree
For these reasons the conviction and sentence of defendant are affirmed.
MARCUS and DENNIS, JJ., concur and assign reasons.
MARCUS, Justice (concurring).
Under the circumstances here presented, the police officers had a legitimate right to be where they were when the bag of cocaine fell to the ground in their plain view. Objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure. Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968). Accordingly, I respectfully concur.
DENNIS, Justice, concurring.
I concur in the holding that the motion to suppress was properly denied. However, I respectfully continue to disagree with the majority's presumptions that citizens are free to "walk away" from a police encounter and are generally aware of this freedom. See State v. Shy, 373 So.2d 145, 148 (La.1979) (dissenting opinion).
NOTES
[*] Chief Judge PAUL B. LANDRY, Retired, is sitting by Assignment as Associate Justice Ad Hoc in place of TATE, J., upon this case.
[1] Louisiana Code of Criminal Procedure, Article 215.1(A) provides:

"A law enforcement officer may stop any person in a public place whom he reasonably suspects is committing, has committed or is about to commit a felony or a misdemeanor and may demand of him his name, address and an explanation of his actions."
[2] We are not discussing repeated unwelcomed intrusions.