KLEES, Judge.
On August 24, 1983, Dani C. Schreiber and Robert M. Duplechin III were jointly charged by separate bills of information with violations of R.S. 40:967, possession of cocaine, and R.S. 40:966, possession of marijuana. Both men initially pled not guilty. Motions to suppress evidence were filed, and after a full hearing they were denied. On October 31, 1983, the defendants withdrew their former plea of not guilty and pled guilty to both charges, reserving their rights to appeal the ruling on the Motions to Suppress under State v. Crosby, 338 So.2d 584 (1976). Each defendant was then sentenced on the 40:967 offense to serve three years at hard labor, suspended, placed on three years active probation and fined $1,000.00. Each defendant was also sentenced on the 40:966 offense to serve four months in Parish Prison, suspended, and fined $250.00. Both sentences were to run concurrently. On appeal they urge that the trial court committed reversible error when it denied the appellants’ Motions to Suppress the Evidence. We find no error on the part of the trial court and Affirm.
FACTS
While patrolling the New Orleans warehouse district in the early morning hours of July 30, 1983, Officers Tamplain and Pena of the Harbor Police spotted a pickup truck containing two men in the 600 block of S. Peters Street. It was nearly 2:00 a.m. and the area was deserted. When the officers returned to S. Peters about 10 minutes later, the truck was still there but the *220 driver was no longer visible. The officers pulled up behind the truck, and Officer Tamplain exited. As he approached the vehicle, Tamplain saw the driver, Duple-chin, hunched over toward the center of the front seat. The passenger, Schreiber, turned around and saw Tamplain approaching, leaned over and mumbled something toward Duplechin. Duplechin straightened up immediately and fumbled with something toward the center of the seat. Officer Tamplain then asked Duplechin to exit with “his hands in plain sight.” When Duplechin exited, the officer smelled the strong odor of burnt marijuana and noted that the defendant looked intoxicated. Tamplain flashed his light in the pickup truck and saw a piece of wood with several rows of cocaine on it partially concealed by a shirt. The Narcotics Division of the NOPD was summoned to the scene. Three bags of marijuana were later observed sticking out of a clutch bag on the floor of the passenger’s side of the vehicle.
Both defendants testified at the suppression hearing. They stated that the cocaine was completely hidden and that Officer Tamplain discovered it only after sticking his hand into the vehicle and removing the shirt.

Errors Patent

A review of the record reveals there are no errors patent.

Assignment of Error

The defendants assign error to the trial court’s denial of their motions to suppress the evidence. They contend that: (1) the evidence was not in plain view when it was discovered; (2) the initial investigatory stop was not made upon reasonable cause.
Whether the cocaine was in plain view turns upon a credibility call within the province of the trial court. The defendants testified that the contraband was-entirely covered by a shirt on the front seat of the pickup. Officer Tamplain testified that the cocaine was only partially concealed. A trial court’s finding of credibility is accorded great weight and will not be disturbed absent an abuse of discretion. State v. Neslo, 433 So.2d 73 (La.1983).
This assignment is without merit, as the initial investigatory stop was made on reasonable cause.
In State v. Flowers, 441 So.2d 707 (La.1983), the court, in a unanimous decision, discusses the problem of determining a valid investigatory stop and suggests a mode of analysis applicable to such an inquiry: The Court uses a three-tiered test:
(a) Whether an intrusion was an arrest or an investigatory stop.
(b) Whether the particular stop was of a type which is reasonable in view of the public interest balanced against the degree of invasion entailed.
(c) Whether the particular stop was warranted by a reasonable suspicion based on specific articulable facts and rational inferences from these facts. Flowers, supra, at 713.
In Flowers, supra, the Court states that the distinction between an arrest and a stop is often crucial because an arrest can be made only on a probable cause standard while a stop may be made under “the more relaxed ‘reasonable suspicion’ standard” of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Among the circumstances courts have considered are: Whether the suspect was questioned at the scene of the detention or transported to the police station; whether he was told he was free to go and would have, in fact, been restrained had he tried to leave; the officers’ intent in stopping the citizen; the impression conveyed to the citizen as to whether he was already in custody or only briefly detained for questioning; the length of the stop, questions asked, and the extent of the search, if any.
Under the facts of the instant case, the line between “arrest” and “investigatory stop” is a thin one. It should be noted that the defendant’s pickup was parked, i.e., already at rest, prior to Officer Tam-plain’s initial confrontation with the driver, Duplechin. There is no indication in the record as to whether Tamplain was in uni *221 form or whether he approached the vehicle with his gun drawn. However, it is clear he was riding in a marked, Harbor Police vehicle and that the passenger, Schreiber, turned around and observed him exiting the vehicle. He told Duplechin to exit “with his hands in plain sight” and to produce his driver’s license. However, the questions the officers asked had to do with whether Duplechin needed some type of assistance. While Duplechin fumbled for his license, the officer flashed his light into the vehicle and discovered the cocaine and drug paraphernalia. The stop does not appear to have been lengthy, and the officer’s intent, at least as it is stated in the transcript, was to render assistance. Given the length of detention, the officer’s expressed intention, and the lack of force used, this court deems the initial confrontation between Officer Tamplain and Robert Duple-chin a “stop”. Therefore, the next inquiry is whether the stop was reasonable.
Whether a stop is reasonable ordinarily depends on the weighing of the public interest against the degree of the intrusion. However, if Officer Tamplain’s expression of intent is credited, then this type of stop has been held reasonable under State v. Sims, 426 So.2d 148 (La.1983); State v. Keller, 403 So.2d 693 (La.1981); and State v. Neyrey, 383 So.2d 1222 (La.1979). That is, an officer stopping to render assistance to an individual in apparent need of it is acting within the permissible scope of his authority. In Sims, Keller, and Neyrey, supra, the defendants were found slumped over the steering wheels of their respective vehicles. In each case, the stops were held valid.
There are some instances in which a police officer may approach a citizen to investigate possible criminal behavior without probable cause to arrest or search for contraband or evidence of a crime. United States v. Brignoni-Ponce, 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). There are other instances in which an officer is justified in detaining an individual to offer to render aid or assistance. State v. Sims; State v. Keller; State v. Neyrey, supra. “Nonetheless, the Fourth Amendment requires that the detaining officer have knowledge of specific, articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the ‘stop’ or ‘seizure’.” Flowers, supra, at page 714, citing United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); United States v. Brignoni-Ponce, supra; Terry v. Ohio, supra, and State v. Brown, 370 So.2d 547 (La.1979).
In this instance, the officers saw the two men sitting in a pickup truck in a deserted area of the city at approximately 2:00 a.m. in the morning. Ten minutes later, one of the men was no longer visible. Officer Tamplain and his partner stopped their vehicle, and Tamplain exited to investigate. Subsequently, as Tamplain approached the pickup, he noted that the “absent” driver had his head hunched down toward the center of the seat, that the passenger mumbled something, and that the driver, then straightened up and fumbled with something toward the middle of the seat. Under these circumstances we conclude that the officers acted lawfully when they investigated the parked automobile. This assignment is without merit.
Accordingly, for the reasons expressed above, appellants’ convictions and sentences are hereby Affirmed.
AFFIRMED.