471 So.2d 831 (1985)
STATE of Louisiana, Respondent,
v.
Lawrence RAY, Applicant.
No. 16947-KW.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
*832 John Milkovich, Indigent Defender Office, Shreveport, for applicant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Catherine M. Estopinal and John A. Broadwell, Asst. Dist. Attys., Shreveport, for respondent.
Before MARVIN, JASPER E. JONES and SEXTON, JJ.
MARVIN, Judge.
In this prosecution of possession of a Schedule II CDS (Pethidine), LRS 40:967(c), the trial court denied defendant's motion to suppress three small capsules which were seized after being observed in defendant's wallet by police with the aid of a flashlight. We granted defendant's writ application to review the trial court's ruling. We conclude that the capsules were admissible under the plain view exception to the warrant requirement and that the trial court was correct in its ruling.

FACTS
After midnight, two deputy sheriffs on routine patrol of the Cross Lake area observed defendant's vehicle parked at the end of a dead end street with its front tires in two or three inches of mud near the water's edge. The car first appeared to be unoccupied but as the officers shined lights on it, they observed defendant rise up in the front seat. As the officers approached defendant's vehicle, defendant rolled down the car window on the driver's side.
One officer asked defendant for identification and shined a flashlight inside the car on the defendant while he was producing his wallet. With the flashlight illuminating the wallet and defendant, the officer observed three red capsules inside the wallet. The officers then asked defendant to get out of the car, seized the capsules, and contacted the Sheriff's office by radio to identify the capsules. A drug intelligence agent responded to the description (Wyeth No. 261 capsules) and informed the officer on the scene that the substance described was Pethidine, a Schedule II CDS, whereupon defendant was arrested.
Defendant argues two discrepancies in this search and seizure. He asserts that the initial approach was without probable cause to arrest or reasonable cause to detain him, and that the capsules were not immediately recognizable to the officers as contraband.

LAW
The plain view doctrine renders a warrantless search and seizure of evidence reasonable where (1) the officer has an overriding prior justification to be in the [assumed] otherwise protected area from which he observes the evidence, (2) he discovers the evidence from this position inadvertently, and (3) it is apparent to him that the evidence observed is contraband. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed. 564 (1971); State v. Neyrey, 383 So.2d 1222 (La.1979); State v. Huston, 445 So.2d 67 (La.App.2d Cir.1984).
Defendant correctly states that the seizure of the capsules was not incident to a lawful custodial arrest or a limited investigatory stop under CCrP Art. 215(A)(1), Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Both officers admitted on cross-examination that, as they first observed *833 and approached defendant's vehicle, they had no articulable suspicion or probable cause to believe that a crime was being or had been committed. However, the requirements of probable cause to arrest or reasonable grounds to detain apply only under circumstances where it is apparent to the individual citizen that "some form of detention is imminent." State v. Duplessis, 391 So.2d 1116 (La.1980); State v. Saia, 302 So.2d 869 (La.1974). Only then is the detention considered forcible and subject to constitutional limitations. State v. Shy, 373 So.2d 145 (La.1979); Neyrey, supra.
The record establishes that until the officer observed the capsules in defendant's wallet he did not intend to forcibly detain defendant and he gave defendant no reason to lead him to understand that he was being forcibly detained. Defendant rolled down his window to address the officers before they reached his vehicle. He readily complied with the request for identification and did not ask the officers why they wanted to see his identification. Under these circumstances, we cannot conclude that defendant was forcibly detained until the capsules were observed. The fact that the officers do not have an articulable suspicion that criminal activity is afoot does not suggest that police are constitutionally prohibited from initiating any contact with citizens. Neyrey states:
Police officers do not need probable cause to arrest, or reasonable cause to detain, in order to converse with citizens... The fact that police approach a citizen and address him does not compel the citizen to respond ... The citizen has the legal right to walk away from the encounter, or simply not to respond... Policemen in the course of their duties initiate or respond to a wide variety of encounters, many of which are not related to the pursuit of criminals... Policemen could not perform such valuable non-prosecutorial services nor could they effectively pursue criminals if they did not initiate or respond to encounters with citizens. 383 So.2d at 1224 (emphasis supplied.)
We recognize that an average citizen cannot detect the threshold of forcible legal detention because police seldom inform a subject of "non-prosecutorial" investigative inquiries that he does not have to respond and is free to go. See Justice Dennis' dissent in Shy and his concurrence in Neyrey. However, for the limited purpose of examining a policeman's right to be in an area from which he observes seizeable evidence of a crime, we believe that the obligation of police to aid and protect citizens outweighs any adverse effect of the assumed limited intrusion of a Neyrey "non-prosecutorial" investigative inquiry.
Here, the officers did not approach defendant to harass him or to search for evidence of a crime. Although the officers admitted under cross-examination that they had no "reason to believe" defendant was in danger, the trial judge apparently construed this to mean that there were no objective signs that they were or defendant was in immediate danger. The car was parked in a peculiar position in the mud at the end of West Lakeshore Drive, a street which "dead ends" into Cross Lake. Its engine was not running and its lights were off. It was past midnight. Each officer testified that he had recently investigated incidents of rape, trash dumping, and disturbances created by "beer bashes" in the Cross Lake area. We believe these circumstances justified the officer's approaching the car, illuminating the occupant and the interior of the car with a flashlight and asking for identification. In short, the intrusion, if any, was reasonable and the officers had every right to be where they were and doing what they did. We conclude the officers would have been remiss in their duty to protect and aid the citizenry had they not done what they did under the circumstances.
Having found the initial approach justified or reasonable, we note that objects observed by officers' shining a flashlight into the passenger area of a car at night are considered to be in open view for the *834 purposes of the first element of the plain view doctrine. State v. Schouest, 351 So.2d 462 (La.1977); State v. Bourg, 332 So.2d 235 (La.1976); State v. McGary, 397 So.2d 1305 (La.1981). The flashlight, under these circumstances, was an illuminating safety device, not an inquisitive tool. The officer's testimony that he "was holding the light so [defendant] could see to get in his billfold" also establishes inadvertent discovery, the second element of plain view.
Defendant further argues that it was not readily apparent to the officers that the capsules were controlled dangerous substances. This element of plain view, first announced in Coolidge, has been modified in Texas v. Brown, 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). The "immediately apparent" language of Coolidge was not and has not been interpreted to require a showing that the observing officer could immediately, accurately, and positively identify the property as contraband.
In State v. Evans, 441 So.2d 82 (La.App. 2d Cir.1983), we stated:
Seizure of property in plain view by an officer who has the right to be where he is involves no invasion of privacy and may be found reasonable if there is probable cause to associate that property with criminal activity. Probable cause in such a situation is a "practical and nontechnical" probability that incriminating evidence is involved, determined by the totality of the circumstances confronting the officer. 441 So.2d at 83 (emphasis supplied.)
For a thorough discussion of Brown's impact on the original Coolidge standard, see State v. Knowles, 438 So.2d 648 (La. App. 2d Cir.1983), writ denied. See also State v. Camp, 459 So.2d 53 (La.App. 2d Cir.1984), writ denied, and State v. Huston, supra.
Here the capsules seized were not in a prescription container but were loose and in defendant's wallet. Defendant told the officers he did not have a prescription from which the capsules could be identified. At this point, the officers had probable cause to associate the capsules with a criminal violation which justified seizure of the capsules and further investigation. This probable cause is not the probable cause for forcible detention but is the probability that the property or the capsules are contraband CDS. The officers could not readily identify the capsules as contraband and they enlisted the aid of drug experts at the Sheriff's office, who quickly responded to the description. The officers did no more than they could have done if they had had available a catalog containing descriptions and photographs of the hundreds of kinds of drugs that are defined as controlled dangerous substances. Under these circumstances, we do not believe that the "readily apparent" element should fail merely because the investigating officer did not have the memory of a drug identification expert, even if an expert is assumed to know, on sight, the hundreds of legally manufactured drugs that are controlled by law.
The trial court correctly overruled defendant's motion to suppress. We AFFIRM and remand for further proceedings.