MARVIN, Chief Judge.
In this action for wrongful arrest, we affirm a judgment that involuntarily dismissed, on the motion of defendants, Perry Thomas’s demand for damages. CCP Art. 1672(B); Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366 (La.App. 2d Cir.1988).
The arrest arose out of an investigative stop (CCrP Art. 215.1) of Thomas and his friend, Leonard Montgomery, by campus police officers at Northeast Louisiana University in Monroe. Thomas was a 40-year-old managerial employee of the City of Monroe responsible for overseeing EEOC compliance. Montgomery, who had once been a student at NLU, was over 30 years old. The NLU police sought their identification and an explanation of their presence on the campus after 8:30 p.m. on September 6, 1989.
The issues concern the extent of the authority of the police to stop or detain and-interrogate, and under appropriate circumstances, to order a citizen on a university campus to leave the campus, as opposed to the citizen’s right to privacy and protection from unwarranted governmental intrusion. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
DISCUSSION
By granting the motion for involuntary dismissal the trial court accepted defendants’ version of the incident, as was its prerogative. In the absence of clear error we do not disturb the trial court’s findings of fact based on its evaluation of the evidence and credibility of the witnesses. Rosell v. ESCO, 549 So.2d 840 (La.1989).
*1098 After Thomas and his friend were stopped or detained, he was arrested for trespassing, or remaining on land after being forbidden to do so (LRS 14:63.3) or refusing to leave the campus premises upon the reasonable request of the lawful custodian of the premises or his representative (Monroe City Code 12-90).
Thomas agrees that a university police officer may make arrests and enforce the law on the university campus under appropriate circumstances. LRS 17:1805. He also agrees that a campus police officer has authority, under reasonably appropriate circumstances, to order persons to leave the campus.
The lawfulness of the arrest of Thomas turns on whether the officer’s stop and interrogation and his request to Thomas to leave the campus were reasonable.
FACTS
Thomas’s arrest arose out of these circumstances:
Two uniformed student officers of the NLU police saw Thomas and Montgomery standing away from or on the fringe of a crowd at a student function where music was being played on an area of the NLU campus near DeSiard Bayou about 8:30 p.m. They observed two other men join these two under observation and saw, what to the student officers appeared to be a manual exchange occur between the four men. The student officers also noted that Thomas and Montgomery repeatedly looked back at the officers who were in uniform on crowd security duty. The student officers became suspicious because of the age of these men and their conduct. In accord with NLU police procedures and their limited authority, they radioed their suspicion to their superior, Sgt. Crawford, a full-time uniformed senior NLU police officer, when Thomas and Montgomery walked away from the crowd and toward the main part of the NLU campus.
Crawford, in his marked patrol car, found the two men walking on Bayou Drive, eventually approaching them on foot, inquiring who they were and why they were on campus. Suspecting they were not students, Crawford asked them for identification or driver’s licenses. Both initially refused Crawford’s request for identification, with Thomas repeatedly telling Crawford that it was none of his business who they were, why they were on the campus and that the officer had no right or no authority to ask him these questions or to talk to him. Crawford radioed for assistance, while continuing to ask who they were and why they were there.
Thomas continued to question why Crawford had to know these things and also invoked to Crawford his acquaintance or friendship with the president of the university.
Eventually Thomas told Crawford they were not students, while continuing to question Crawford’s “authority.” Montgomery first produced his driver's license for Crawford. After some time, Thomas produced his. Crawford then radioed the Monroe police to determine if either had outstanding arrest warrants while Thomas continued his remarks to Crawford.
Crawford told them if they were not going to explain their purpose on campus to him they should leave the campus. Thomas told Crawford he had every right to be there and he would not leave. By this time other NLU police officers were arriving. Crawford told the two several times to leave the campus or they would be arrested for trespassing if they refused to leave. Montgomery, and to a lesser extent, Thomas, corroborated Crawford’s testimony that Thomas “dared” Crawford to arrest him. Montgomery said that Thomas “still asked him ... what have I done. Then [Crawford] came back and said, ‘well, if you’re not going to go, I’m going to arrest you,’ you know, like that.” Thomas responded, “you might as well arrest me, you’ve done everything else.” Montgomery then explained: “Then between them, words had passed [about] being arrested or something like that [and] the next thing you know — well [Crawford] said ‘you’re not going?’ ... and ... one guy clipped him ... [with the handcuffs]_after they put him in the car ... they asked me to leave_ and ... I left, I left walking.”
*1099 Crawford was asked “what had Mr. Thomas done to make your request for him to leave reasonable ... ?” Crawford answered:
... his belligerent manner, his failure to produce an ID ... and ... he wouldn’t give me his business on campus ...
Q: ... he was being questioned about his business at a point where he had not committed a criminal offense. Is that correct?
That’s correct.
Q: ... you felt you had enough information to order him to leave the campus? After all the talking to him and all the matters I described to you before, I did. Q: ... did he resist [being arrested]?
... Moderately].
Officer Bethea arrived when Sgt. Crawford was getting the negative report about the warrants: “Sgt. Crawford tried to explain to him ... he was going to be asked to leave if he didn’t give his business and if he didn’t leave, he’d be arrested.” Thomas was responding to Sgt. Crawford, “... it is none of [your] business, [you have] no right to talk to [me].” Bethea said: “I looked at Mr. Thomas and I said ... ‘Sgt. Crawford has advised you that if you do not leave you will be arrested, so what you’re saying is you're not going to leave?' He said go ahead and arrest me, I’m not going to leave. At which time Sgt. Crawford advised him he was being placed under arrest, advised him to put his hands on the car ...”
THE LAW
Public university or college police officers are charged with “maintaining general order and exercising police power on the campus ... [for which they are commissioned].” LRS 17:1805. Emphasis supplied. By this statute, the legislature has recognized the geographical premises or entity of a university, which by its statutory creation is, of course, a legal entity. NLU, like other public universities, is a legal entity with defined premises or a geographical “campus.”
LRS 14:63.3 makes it a misdemeanor for a person to remain on immovable property, including public things, when orally forbidden to do so by any custodian of the property or by any other authorized person. While Mr. Thomas questioned Crawford’s authority on the night of his arrest, he does not, on appeal, question Crawford’s lawful authority under the above statutes, but complains that Crawford exercised his authority in several respects unreasonably, so as to have committed an unlawful arrest, one without reasonable cause to arrest without a warrant. CCrP Art. 213.
Even without the Art. 215.1 reasonable suspicion, a police officer has the right to engage in a conversation with or ask questions of a citizen in a public place. As long as the citizen remains free to disregard the questions and walk away, the officer does not intrude on that citizen’s liberty or privacy so as to require some particularized and objective justification under the federal and state constitutions. See discussion and authorities in State v. Hall, 581 So.2d 337, 338 (La.App. 3d Cir.1991); State v. Neyrey, 383 So.2d 1222 (La.1979).
If the police officer “stops” or detains the citizen to the extent that the citizen is not free to disregard the questions and walk away, the officer’s “intrusion” reaches constitutional overtones and requires the particularized and objective justification. Hall, supra. Terry v. Ohio, supra. CCrP Art. 215.1. In such circumstances, the officer must articulate a factual basis for a “suspicion” that is, by hindsight, objectively found “reasonable” to constitutionally justify the “intrusion” into the citizen’s privacy. The officer need not, at this juncture, have the reasonable or probable cause to arrest without a warrant. Reasonable suspicion to stop and interrogate is something less than probable cause to arrest. Terry v. Ohio; State v. Neyrey, both cited supra. Compare Arts. 213 and 215.1.
Sgt. Crawford’s suspicion of criminal activity, in our opinion, was reasonable. The older men were reported to him to have been exchanging something unidentifiable while standing away from the crowd and looking back at the student officers. The two men walked away from that gathering and toward the main area of the *1100 campus when they noticed that the student police were observing them. The reported exchange, to Crawford, smacked of a drug transaction.
A reasonable police officer possessing this same information would have acted to determine who the men were and why they were on campus. Crawford said that after the warrants-check turned out negative, the two were free to leave the campus, that he asked them to leave the campus because they would not explain their presence there, because of the time," because Mr. Thomas was belligerent, and because they were not NLU students.
Thomas prolonged and exacerbated both the “stop” and the “interrogation,” which otherwise could have -been a very brief, innocuous and minimal intrusion. Thomas provoked the arrest. He admitted he was not an NLU student and refused repeated requests to explain his purpose there and refused to leave when told he would be arrested if he did not leave, saying first to Crawford and then to Bethea, “go ahead, you’ve done everything else.”
CONCLUSION
Under the circumstances of this record, we cannot find that Sgt. Crawford acted “unreasonably” in any respect. His initial suspicion of criminal activity to constitutionally justify his stop and interrogation was reasonable for the articulated reasons he explained. His exercise of police authority to order a 40-year-old non-student, who would not explain his purpose, to leave the campus after 8:00 p.m., under the circumstances, was reasonable under the state statute and the city ordinance. He had probable cause to arrest when Thomas told him and Officer Bethea he was not going to leave, and said, “go ahead and arrest me, you’ve done everything else.”
DECREE
The arrest was not wrongful. At Thomas’s cost, the judgment dismissing Thomas’s demands for damages is AFFIRMED.