Judge MICHAEL E. KIRBY.
STATEMENT OF THE CASE:
On March 20, 2000, the defendants, Dianne Homes and Robert Colbert, were charged by bill of information with possession of cocaine. La. R.S. 40:967. They were arraigned and pled not guilty on March 23, 2000. A six member jury found them guilty as charged on April 3, 2000. They were sentenced on July 6, 2000. Defendant Robert Colbert received five years at hard labor, suspended, with three years of active probation. He was ordered to report for twenty urine tests, to enroll in in-patient substance abuse counseling, to pay $200 for monitoring by the drug court and/or intensive probation supervision, to pay $1,000 to the Criminal Court Judicial Expense Fund and other related expenses, and to pay $20 a month to the Department of Probation to defer the costs of supervision. Court costs were waived. Defendant Dianne Homes was sentenced to twenty months at hard labor. Both defendants filed motions to reconsider their sentence which were denied. Both defendants filed motions for appeal.

FACTS:

| {.Officer Orlanda Matthews said he was patrolling in downtown New Orleans on February 4, 2000, at 7:30 p.m. He was cruising in a parking lot at the corner of Tulane and South Claiborne Avenues, an area where there had been a rash of auto burglaries and drug violations. The lights of his car were off. The defendants were standing near a fence near an on-ramp to the highway. Officer Matthews slowly crept forward, and the defendants moved to the other side of the bridge. Officer Matthews drove to a nearby parking lot. At first the defendants could not see the officer, because the view was blocked by a building. But when they did see him, defendant Colbert dropped a glassy object to the ground and defendant Homes “fumbled” with her purse. Officer Matthews stopped them. He was concerned for his safety, so he took the purse from Homes and sat it on the police car. He found a crack pipe where defendant Colbert had thrown the glassy object. He found a piece of a broken crack pipe in Homes’ purse. He placed both defendants under arrest.
Officer Harry O’Neal, a drug chemist with the crime lab, found cocaine residue in both pipes. He said the piece of pipe *551 found in defendant Homes’ purse could still be used to smoke crack.

ERRORS PATENT:

We find no errors patent. We note that there may have been some variation between the minutes and the transcript as concerns defendant Homes’ sentence. Whenever variation between the minutes and transcript occurs, the transcript controls. State v. Walker, 01-348 (La.App. 5 Cir. 8/28/01), 795 So.2d 459; State v. Lynch, 441 So.2d 732, 734 (La.1983).

ASSIGNMENT OF ERROR ONE:

Defendant Colbert argues his sentence was excessive.
lsAlthough a sentence is within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Sepulvado, 367 So.2d 762 (La.1979). A sentence is unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless and needless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Lobato, 603 So.2d 739 (La.1992); State v. Telsee, 425 So.2d 1251 (La.1983).
Here, defendant Colbert was facing a sentence of five years and a fine of $5000. He does not argue that the length of his sentence was excessive. He argues that his fine was excessive and that he should not have been sentenced to additional time for not paying the fines because he is indigent. Defendant Colbert is in fact homeless.
Defendant Colbert was not fined under the statute. He was ordered to pay costs as a special condition of his probation. This court has stated:
An indigent person may not be incarcerated because he fails to pay a fine
that is part of his sentence. See State v. Conley, 570 So.2d 1161 (La.1990); see also State v. Berryhill, 562 So.2d 1105, 1111-1112 (La.App. 4th Cir.1990). If incarceration is conditioned upon an indigent person’s failure to pay a fine, the sentence must be amended on appeal to remove incarceration; the fine may be left intact. See, e.g., State v. Monson, 576 So.2d 517, 518 (La.1991). A sentence in which an indigent person is ordered to pay a fine is not unconstitutional, however, as long as the order does not provide for incarceration if the fine is not paid. See State v. Massey, 599 So.2d 889, 892 (La.App. 4th Cir.1992); see also State v. Reed, 598 So.2d 1276, 1277 (La.App. 4th Cir.1992). In such a case, collection of the fine can be pursued by civil process. See La. C.Cr.P. art. 886; see also Conley, supra, at 1161 n. 1.
State v. McGee, 95-1863, p. 2 (La.App. 4 Cir. 10/18/95), 663 So.2d 495, 496.
Defendant Colbert was not sentenced to additional time if he fails to pay the costs. It is not illegal to assess costs as a special condition of probation where there is no provision the defendant would be imprisoned if he fails to pay the costs. State v. Duncan, 601 So.2d 374 (La.App. 5 Cir.1992).
This assignment is without merit.

ASSIGNMENT OF ERROR TWO (SUPPLEMENTAL BRIEF):

The defendants both argue ineffective assistance of counsel.
Generally, the issue of ineffective assistance of counsel is a matter more properly addressed in an application for post conviction relief, filed in the trial court where a full evidentiary hearing can be conducted. State v. Prudholm, 446 So.2d 729 (La.1984); State v. Johnson, 557 *552 So.2d 1030 (La.App. 4 Cir.1990); State v. Reed, 483 So.2d 1278 (La.App. 4 Cir.1986). Only if the record discloses sufficient evidence to rule on the merits of the claim do the interests of judicial economy justify consideration of the issues on appeal. State v. Seiss, 428 So.2d 444 (La.1983); State v. Ratcliff, 416 So.2d 528 (La.1982); State v. Garland, 482 So.2d 133 (La.App. 4 Cir.1986); State v. Landry, 499 So.2d 1320 (La.App. 4 Cir.1986).
The defendants’ claim of ineffective assistance of counsel is to be assessed by the two part test of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); State v. Fuller, 454 So.2d 119 (La.1984). A defendant must show that counsel’s performance was deficient and that the deficiency prejudiced the defendant. Counsel’s performance is ineffective when it can be shown that he made errors so serious that counsel was not , functioning as the “counsel” Isguaranteed to the defendant by the Sixth Amendment. Strickland, supra at 686, 104 S.Ct. at 2064. Counsel’s deficient performance will have prejudiced the defendant if he shows that the errors were so serious as to deprive him of a fair trial. To carry his burden, the defendant “must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Strickland, supra at 693, 104 S.Ct. at 2068. The defendant must make both showings to prove that counsel was so ineffective as to require reversal. State v. Sparrow, 612 So.2d 191, 199 (La.App. 4 Cir.1992).
This court has recognized that if an alleged error falls “within the ambit of trial strategy” it does not “establish ineffective assistance of counsel.” State v. Bienemy, 483 So.2d 1105 (La.App. 4 Cir.1986). Moreover, as “opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel’s trial decisions. Neither may an attorney’s level of representation be determined by whether a particular strategy is successful.” State v. Brooks, 505 So.2d 714, 724 (La.1987).
Here, the defendants argue that counsel was ineffective because he failed to file a motion to suppress the evidence and because he did not object to the admission of the evidence. However, if there was no basis for the suppression of the evidence, then the defendants were not prejudiced by defense counsel’s failure to move to suppress the evidence or to object to its introduction. The court must consider whether the evidence was illegally seized.
La. Const. Art. I, Sec. 5 provides in part:
1 ^Section 5. Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search.
The Louisiana Supreme Court has held the police may not make a warrantless arrest of a citizen without probable cause that the citizen has engaged in criminal conduct. State v. Zielman, 384 So.2d 359, 363 (La.1980); State v. Tomasetti, 381 So.2d 420, 423 (La.1980); State v. Mendoza, 376 So.2d 139, 141 (La.1979). The Court has further held that while the police may briefly detain and interrogate an individual, a less encroaching intrusion on an individual’s right to be free from governmental interference than an arrest, the police may only do so based upon reason *553 able, articulable suspicion that the individual has engaged in, is engaging in, or is about to engage in criminal conduct. La. C.Cr.P. art. 215.1; Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Andrishok, 434 So.2d 389, 391 (La.1983); State v. Chopin, 372 So.2d 1222, 1224 (La.1979).
In State v. Tucker, 626 So.2d 707, 710-713 (La.1993), (footnotes omitted), the Louisiana Supreme Court stated:
In an effort to discourage police misconduct in violation of these standards, evidence recovered as a result of an unconstitutional search or seizure has been held inadmissible. Thus, evidence abandoned by a citizen and recovered by the police as a direct result of an unconstitutional seizure may not be used in a resulting prosecution against the citizen. Chopin, 372 So.2d at 1224. If, however, a citizen abandons or otherwise disposes of property prior to any unlawful intrusion into the citizen’s right to be free from governmental ^interference, then such property may be lawfully seized and used against the citizen in a resulting prosecution. In this latter case, there is no expectation of privacy and thus no violation of a person’s custodial rights. Chopin, Id.; State v. Ryan, 358 So.2d 1274, 1275 (La.1978).
The foregoing standards of police conduct and rules of inadmissibility of unlawfully seized evidence are intended to protect individuals from unwarranted, “forcible” governmental interference. State v. Neyrey, 383 So.2d 1222, 1224 (La.1979). These protections are not implicated, therefore, when an individual encountered by a law enforcement officer remains free to disregard the encounter and walk away. State v. Belton, 441 So.2d 1195, 1199 (La.1983); State v. Lanter, 391 So.2d 1152, 1154 (La.1980); Neyrey, supra, 383 So.2d at 1224; State v. Shy 373 So.2d 145, 147-48 (La.1979). Thus, “[i]t is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the ‘right to be left alone’ is violated, thereby rendering unlawful any resultant seizure of abandoned property.” Belton, 441 So.2d at 1199 (emphasis added). See also, Andrishok, 434 So.2d at 391; Chopin, 372 So.2d at 1224.
[[Image here]]
In Belton we found an individual is “seized” within the meaning of La. Const. Art. 1, Sect. 5 when the individual is either “actually stopped” or when an “actual stop” of the individual is “imminent.” We believe this two-pronged inquiry reflects the aforementioned additional protections of our constitution. That is, while the Fourth Amendment only protects individuals from “actual stops” by law enforcement officers, Hodari D.[1], our constitution also protects individuals from “imminent actual stops.” Therefore, it becomes incumbent upon us to now determine what constitutes an “actual stop” and an “imminent actual stop” as those terms were used in Belton.
IsAfter careful consideration of the Hodari D. decision, we conclude it correctly identifies when, during a police encounter, an individual has been “actually stopped.” We agree with the United States Supreme Court, an “actual stop” of an individual has not occurred when a police officer yells “Halt!” at a fleeing form which continues to flee. Thus, we hold that an individual has not been “actually stopped” unless he submits to a police show of authority or he *554 is physically contacted by the police. Accordingly, we adopt Hodari D. insofar as it defines when an “actual stop” of a citizen, a seizure under La. Const. Art. 1, Sect. 5, has occurred.
Giving full weight to the additional protections of La. Const. Art. 1, Sect. 5, we must now determine what constitutes an “imminent actual stop.” This inquiry is necessary for those situations wherein the police attempt to seize an individual but the individual neither submits to the police show of authority nor is physically contacted by the police. Under these circumstances, despite the absence of an “actual stop” as defined above, our constitution might still mandate a finding that the individual had been seized if an “actual stop” of the individual was “imminent.”
In determining whether an “actual stop” of an individual is “imminent,” we find that the focus must be on the degree of certainty that the individual will be “actually stopped” as a result of the police encounter. This degree of certainty may be ascertained by examining the extent of police force employed in attempting the stop. It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain, that an “actual stop” of the individual is “imminent.” Although non-exhaustive, the following factors may be useful in assessing the extent of police force employed and determining whether that force was virtually certain to result in an “actual stop” of the individual: (1) the proximity of the police in relation to the defendant at the. outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police | ^approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.
In this case, Officer Matthews turned his car and the defendants saw him. Although he shone his lights on them, there is no indication that there was a stop. Officer Matthews was alone; there were no weapons; the defendants were not surrounded. Defendant Colbert dropped the crack pipe and therefore abandoned it. At that point, Officer Matthews stopped the defendants and, seeing defendant Homes concealing something in her purse, took it from her for his protection. He found the crack pipe where defendant Colbert had abandoned it, and had probable cause for arrest at that point. He found the second pipe in a search of the purse incident to defendant Homes’s arrest.
There was no authority to support suppression of the evidence. Counsel was not ineffective for failing to file a motion to suppress or for not objecting to its admission.
This assignment is without merit.

CONCLUSION:

For the foregoing reasons, we affirm the convictions and sentences.
AFFIRMED.

. California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991).