604 So.2d 702 (1992)
STATE of Louisiana
v.
Paul DUCRE and Whilamena Ducre.
No. KA 91 1050.
Court of Appeal of Louisiana, First Circuit.
June 29, 1992.
*704 William R. Campbell, New Orleans and Charles Collins, Asst. Dist. Atty., Covington, for the State.
George C. Ehmig, Covington, for appellants.
Before COVINGTON, C.J., and LeBLANC and WHIPPLE, JJ.
COVINGTON, Chief Judge.
The defendants, Paul and Whilamena Ducre, were charged by bill of information with possession of marijuana with intent to distribute, a violation of LSA-R.S. 40:966 A(1), and possession of dextropropoxyphene with intent to distribute, a violation of LSA-R.S. 40:969 A. They pled not guilty and, after trial by jury, were found guilty as charged on both counts. For their convictions of possession of marijuana with intent to distribute, both defendants received sentences of ten years at hard labor. The trial court suspended these sentences and placed the defendants on probation for five years with numerous special conditions. For their convictions of possession of dextropropoxyphene with intent to distribute, the defendants received concurrent sentences of five years at hard labor. The trial court also suspended these sentences and placed the defendants on probation for five years with several special conditions. While the trial court imposed concurrent sentences upon the defendants, it ordered that the special conditions of probation run consecutively. The defendants have appealed, alleging two assignments of error, as follows:
1. The trial court erred in denying the defendants' motion to suppress.
2. The trial court erred in denying the defendants' motion for a new trial.

FACTS
At approximately 9:00 p.m. on August 8, 1990, Detective John Lapouble of the St. Tammany Parish Sheriff's Office received a call from a confidential informant indicating that a black male wearing a green baseball cap and a green shirt was selling marijuana in the parking lot of the Dew Drop Inn in Slidell, Louisiana. In the past, this confidential informant had given Lapouble information which led to an arrest. Lapouble and several other officers went to the Dew Drop Inn lounge in two unmarked police vehicles. When they entered the parking lot, they observed a black male suspect with a green baseball cap and a green shirt standing beside a tan Ford LTD. The suspect, later identified as Jesse Ray Smith, was leaning inside the driver's window of the Ford LTD; his hands were completely inside the driver's window. The occupants of the tan Ford LTD were later identified as the defendants; Paul Ducre was the driver, and Whilamena Ducre was the front seat passenger. When the officers exited their vehicles, Mr. Smith immediately turned and began walking away. He reached inside his back pants pocket and began to remove a plastic bag containing what appeared to be marijuana. However, he was immediately apprehended by Det. Mark Hebert, who seized the bag of suspected marijuana. When the other officers secured Mr. Smith, Detective Hebert walked over to the defendants' vehicle and asked them for some identification. Because the interior light was turned on, he *705 was able to observe what appeared to be a marijuana cigarette inside the ashtray. He advised the defendants of their Miranda rights, seized the marijuana cigarette, and placed the defendants under arrest. He then searched the interior of the vehicle. In a white plastic shopping bag underneath the front driver's seat, Hebert discovered several bags containing various amounts of what appeared to be marijuana. He found two clear plastic bags wrapped inside a blue and white towel or rag on the dashboard. One contained a small amount of what appeared to be marijuana; the other bag contained twenty white pills and one pink pill. Also discovered inside the vehicle were cigarette rolling papers and some empty clear plastic sandwich bags. Meanwhile, Detective Richard Magee searched Mr. Smith and recovered a Sucrets can which contained three suspected marijuana cigarettes. Subsequently, tests at the Louisiana State Police Crime Lab revealed all of the suspected marijuana to actually contain marijuana; the pink pill contained dextropropoxyphene; however, the twenty white pills were free of controlled dangerous substances.
At the trial, Detective Lapouble testified concerning the telephone call from the confidential informant and the facts surrounding the arrest of the defendants in the parking lot of the Dew Drop Inn lounge. His testimony was corroborated by the testimony of Detectives Magee and Hebert.
Defendants took the stand in their own defense. Paul Ducre testified that, on the morning of August 8, he took his wife, Whilamena Ducre, to the North Shore Hospital. He explained that she was receiving back treatments for a work-related accident. Early that afternoon, he went to Bill Garrett Chevrolet and obtained the tan Ford LTD, which was loaned to him by the dealership until his truck was repaired. He picked up his wife at the hospital at approximately 2:00 p.m. Later that evening, he and his wife went to the Dew Drop Inn lounge in an attempt to locate his brother. Ducre testified that he went inside the lounge, looked around, but did not see his brother. When he returned to the parking lot, Jesse Smith approached; and they began a conversation. Suddenly, two cars pulled into the parking lot; and several police officers exited with guns drawn and instructed everyone not to move. The officers grabbed Mr. Smith (who was walking away at the time) and searched him. Then one officer approached Mr. Ducre and ordered him to get out and put his hands on top of the car. He complied. The officer searched him and handcuffed him. According to Mr. Ducre, the officer then searched the entire vehicle without his permission and without a warrant. Next, the officers took his wife out of the car, searched her person and her purse, and handcuffed her.
Mr. Ducre specifically denied engaging in any drug transaction with Mr. Smith. He also denied seeing any marijuana in the tan Ford LTD. Mr. Ducre explained: "I don't know where that [the marijuana] come (sic) from. They came up with it when we got to the station." Finally, he testified that the marijuana recovered by the officers did not belong to him, he was not aware of its existence, and he had no reason to believe that it was inside the car because he had just picked up the car from the Chevrolet dealership that morning.
On cross-examination, Mr. Ducre denied observing a marijuana cigarette in the ashtray, although he had been driving the car for several hours that day. He explained that his wife was taking pain pills for a back injury, but he could not name the type of medication. He testified that his wife had a prescription for the pain pills and, in fact, had just filled the prescription the day of their arrest. However, Mr. Ducre denied seeing a blue and white rag or towel on the dashboard of the vehicle.
Whilamena Ducre testified that she arrived at the hospital at approximately 8:30 a.m. on August 8. When her husband picked her up at approximately 2:00 p.m., he was in a different vehicle, the tan Ford LTD which he had obtained from Bill Garrett Chevrolet. After leaving the hospital, they bought some hay and feed for their animals, which was placed in the trunk of the car. They also stopped at the home of Mr. Ducre's father before returning to their own home. At approximately 8:00 *706 p.m., they left home and went to look for Mr. Ducre's brother. After stopping at Domino's Pizza, they arrived at the Dew Drop Inn lounge. While he went inside the lounge, Mrs. Ducre remained in the vehicle eating pizza. As he returned to the car, Mr. Smith approached and began a conversation. According to Mrs. Ducre, the police officers drove into the parking lot so fast that she believed someone would be killed. The officers seized Mr. Smith, threw a bag on top of the car, and handcuffed him. One officer ordered Mr. Ducre to get out of the car. He complied and was handcuffed. Mrs. Ducre testified that two different officers searched inside the tan Ford LTD. She denied seeing any bags of marijuana or marijuana cigarettes inside the vehicle. She also testified that she informed the officers that, if they intended to arrest her, she needed her pills, whereupon one officer looked inside the vehicle and found the bag containing her pills. However, Mrs. Ducre denied seeing a blue and white rag or towel inside the vehicle. She explained that the pink pill was a pain pill prescribed by Dr. James Gosey in Slidell and that she had filled this prescription in Lacombe. At the trial, she produced a similar pink pill and a prescription bottle, although these items were not actually introduced into evidence.

ASSIGNMENT OF ERROR NUMBER ONE:
In this assignment of error, the defendants contend that the trial court erred in denying their motion to suppress physical evidence. Specifically, the defendants contend that the officers lacked probable cause for the initial detention and, therefore, the subsequent search, seizure of evidence, and the arrest of the defendants was illegal.
The Fourth Amendment to the United States Constitution and Article I, Section 5, of the Louisiana Constitution protect people against unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by Louisiana Code of Criminal Procedure Article 215.1, as well as both federal and state jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Bracken, 506 So.2d 807, 811 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987). Reasonable cause for an investigatory detention is something less than probable cause and must be determined under the facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual's right to be free from governmental interference. The right to make an investigatory stop and question the particular individual detained must be based upon reasonable cause to believe that he has been, is, or is about to be engaged in criminal conduct. State v. Payne, 489 So.2d 1289, 1291 (La.App. 1st Cir.), writ denied, 493 So.2d 1217 (La.1986). The totality of the circumstances must be considered in determining whether reasonable cause exists. In order to assess the reasonableness of an officer's conduct, it is necessary to balance the need to search or to seize against the harm of invasion. State v. Scott, 561 So.2d 170, 173 (La.App. 1st Cir.), writ denied, 566 So.2d 394 (La. 1990).
At the trial,[1] Detective Hebert admitted that the officers had not received information that the defendants were engaged in criminal activity. However, he testified that he suspected Jesse Smith "had something to do with the people inside the vehicle." Under the circumstances presented herein, we find that his suspicion that the defendants might be engaged in criminal activity was reasonable. Detective Lapouble had received information from a confidential informant that Jesse Smith was selling marijuana in the parking lot of the Dew Drop Inn lounge. An informant's tip can provide a police officer with reasonable cause to detain and question a *707 suspect. State v. Borning, 477 So.2d 134, 138 (La.App. 1st Cir.1985), writ denied, 481 So.2d 1330 (La.), cert. denied, 479 U.S. 988, 107 S.Ct. 582, 93 L.Ed.2d 584 (1986). Although the defendants were not mentioned in the confidential informant's tip about Smith, when the officers arrived at the parking lot of the Dew Drop Inn lounge, they observed Smith standing beside the defendants' vehicle. Smith was leaning into the driver's side window, and both of his hands were inside the defendants' vehicle. When the officers pulled into the parking lot and exited their vehicles, Smith immediately turned and walked away. Detective Hebert apprehended Smith as he attempted to remove a plastic bag of marijuana from his back pants pocket. Given these facts, Detective Hebert was justified in approaching the defendants' vehicle and questioning them in accordance with La. C.Cr.P. art. 215.1.
Having found that Detective Hebert had reasonable suspicion to detain the defendants and question them pursuant to La.C.Cr.P. art. 215.1, we now consider the seizure of physical evidence. Seizures of evidence under the plain view doctrine are permissible when: (1) there is a prior justification for an intrusion into a protected area; (2) in the course of which evidence is discovered inadvertently;[2] and (3) it is immediately apparent without close inspection that the items are evidence or contraband. State v. Hernandez, 410 So.2d 1381, 1383 (La.1982).
Immediately upon approaching the defendants' vehicle and asking for identification, Det. Hebert looked inside the vehicle and observed what appeared to be a marijuana cigarette in the ashtray. If an officer has lawfully detained a person based upon reasonable cause, and he sees direct evidence of a crime in plain view, based on that evidence he has probable cause for arrest and may seize the evidence in plain view. State v. Beasley, 430 So.2d 1273, 1278 (La.App. 1st Cir.1983). At this point, Det. Hebert had probable cause to seize the marijuana cigarette and arrest the defendants, and a subsequent search of the vehicle and seizure of the remaining evidence was justified as a search incident to a lawful arrest. See State v. Hubbard, 506 So.2d 839, 841-843 (La.App. 1st Cir. 1987); State v. Singletary, 442 So.2d 707, 710-711 (La.App. 1st Cir.1983). Accordingly, we find that the trial court correctly denied the defendants' motion to suppress physical evidence.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWO:
In this assignment of error, the defendants contend that the trial court erred in denying their motion for a new trial. We note that, in order to challenge these convictions on the basis of insufficiency of the evidence, the defendants should have proceeded by way of a motion for post verdict judgment of acquittal. See La.C.Cr.P. art. 821. Nevertheless, we will consider a claim of insufficiency of the evidence which has been briefed pursuant to a formal assignment of error. See State v. Tate, 506 So.2d 546, 551 (La.App. 1st Cir.), writ denied, 511 So.2d 1152 (La.1987).
The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. See La.C.Cr.P. art. 821; State v. King, 563 So.2d 449, 456 (La.App. 1st Cir.), writ denied, 567 So.2d 610 (La.1990). The Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), standard of review incorporated in Article 821 is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the fact finder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. McLean, 525 So.2d 1251, 1255 (La.App. 1st Cir.), writ denied, 532 So.2d 130 (La.1988).
*708 In their brief to this Court, the defendants do not contest the sufficiency of the evidence of their possession with intent to distribute marijuana convictions. Instead, the instant assignment of error relates only to their convictions for possession of dextropropoxyphene with intent to distribute. The defendants contend that the evidence was insufficient to prove an intent to distribute, since only one pill containing dextropropoxyphene was recovered from their vehicle. The defendants also contend that their possession of this single pill containing dextropropoxyphene was not unlawful, since Mrs. Ducre "had just been to the hospital and was under the care of a physician, who had prescribed this pain killer."
Dextropropoxyphene is classified as a Schedule IV controlled dangerous substance. See LSA-R.S. 40:964, Schedule IV A(23). It is unlawful for any person unknowingly or intentionally to possess a controlled dangerous substance classified in Schedule IV unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner. LSA-R.S. 40:969 C.
At the trial, Whilamena Ducre testified that she had been under a doctor's care for a back injury for several years and had prescriptions for the pink pill (dextropropoxyphene), which she apparently brought with her in her purse. She twice offered to show these prescriptions to the attorneys, who did not examine them, and also offered to show them a prescription bottle for the pink pills. Her explanation of why the white pills and pink pill were in a sandwich bag was that the bottle for the white pills had been cracked; she apparently kept her pink pill for pain with her in case she needed it.
Both the prosecuting attorney and her defense attorney examined the prescription bottle in the presence of the jury, reading the name of the doctor and the date and place the prescription was filled from the label and questioning her about these items. Mrs. Ducre testified that the pink pill containing dextropropoxyphene was a pain pill prescribed by Dr. James Gosey in Slidell and that she had that prescription filled in Lacombe in February, 1990. She denied that the plastic bag containing these pills was wrapped inside a blue and white rag or towel. She testified that she never saw such a towel inside the car. Strangely, the prescriptions she offered to show from her purse and the bottle were not offered into evidence by her attorney.
The intent to distribute may be inferred from the surrounding circumstances. The trier of fact may look to how the substance was packaged, the quantity of the substance seized, and the presence of scales or other paraphernalia for drug use or packaging. State v. Jordan, 489 So.2d 994, 996-997 (La.App. 1st Cir.1986).
In this instance, we find that the surrounding circumstances do not support an inference of an intent to distribute dextropropoxyphene. While there was certainly a large enough quantity of marijuana present to support the conviction pertaining to that substance, the presence of a single pill containing a controlled dangerous substance in a sandwich bag with other pills which were not controlled does not support the inference of an intent to distribute dextropropoxyphene. Although the pill was contained in a sandwich bag rather than its proper container, this circumstance alone, in view of the lack of other indicia of a transaction involving the dextropropoxyphene, does not meet the standard of Jackson v. Virginia.
However, we find that the evidence was sufficient to support a conviction for the lesser, included, responsive verdict of simple possession of dextropropoxyphene, under Jackson v. Virginia. See, LSA-C.Cr.P. art. 821 E; LSA-C.Cr.P. 814 A(49); State v. Byrd, 385 So.2d 248 (La. 1980). LSA-R.S. 40:969 C provides that possession of dextropropoxyphene is unlawful unless it was obtained with a valid prescription. Under LSA-R.S. 40:990 A, the defendant bears the burden of proving that he possessed otherwise illegal drugs pursuant to a valid prescription. This statute reads, in pertinent part, as follows:
It shall not be necessary for the state to negate any exemption or exception set forth in this part in any complaint, information, *709 indictment or other pleading or in any trial, hearing, or other proceeding under this part, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit.
See, State v. Lewis, 427 So.2d 835, 840 (on rehearing) (La.1983); State v. Beridon, 449 So.2d 2, 7 (La.App. 1st Cir.), writ denied, 452 So.2d 178 (1984). While a purported prescription and prescription bottle possessed by Mrs. Ducre were exhibited at trial, these items were not introduced into evidence. Therefore, we are constrained to find that the defendants did not meet their burden of proof under LSA-R.S. 40:990 A.
Accordingly, we set aside the convictions for possession of dextropropoxyphene with intent to distribute, vacate the sentences, and remand the matter to district court with instructions to enter a judgment of guilty of possession of dextropropoxyphene and for resentencing.
This assignment of error has merit.

PATENT SENTENCING ERROR
We note the existence of two patent sentencing errors. First, the trial court erred by sentencing the defendants without waiting twenty-four hours after the denial of their oral motion for a new trial. See La.C.Cr.P. art. 873. The record reflects no waiver of this time period by the defendants. Although the defendants should have filed a written motion for a new trial (see La.C.Cr.P. art. 852), they stated that the oral motion for a new trial would be supplemented by a written motion, and the trial court considered and denied the motion. In fact, the record reflects that a written motion for new trial was filed on the day after sentencing. (R 34). Nevertheless, in State v. Augustine, 555 So.2d 1331, 1333-1335 (La.1990), the Louisiana Supreme Court implied that a failure to observe the twenty-four hour delay provided in Article 873 will be considered harmless error where the defendant could not show that he suffered prejudice from the violation. See State v. White, 404 So.2d 1202 (La.1981). In Augustine, the Louisiana Supreme Court concluded that prejudice would not be found if the defendant had not challenged the sentence imposed and the twenty-four hour delay violation was merely noted on patent error review. In the instant case, the defendants have not assigned as error the trial court's failure to observe the twenty-four hour delay, nor have they contested the sentences imposed. Accordingly, under these circumstances, this patent sentencing error is harmless beyond a reasonable doubt and does not require a remand for resentencing.
Second, we note that the trial court did not give the defendants credit for time served when the sentences were imposed. La.C.Cr.P. art. 880 requires the court to give the defendant "credit toward service of his sentence for time spent in actual custody prior to the imposition of sentence." Patent sentencing error occurs when the trial court fails to specify credit for time served. State v. Greer, 572 So.2d 1166, 1172 (La.App. 1st Cir.1990). Accordingly, we find a patent sentencing error and amend the sentences for the conviction of possession of marijuana with intent to distribute to reflect that the defendants are to be given credit for time served, if any, prior to the execution of their sentences. See La.C.Cr.P. art. 882A. Resentencing is not required for this error. However, since special conditions of probation for both defendants for each of their convictions were to run consecutively, and since we must set aside defendants' convictions of possession of dextropropoxyphene with intent to distribute, we must remand the case for resentencing. We also order the district court to amend the commitments and the minute entry of the sentencing to reflect that the defendants are to be given credit for time served.
For the foregoing reasons, the convictions and sentences of defendants for possession of marijuana with intent to distribute are affirmed as amended. The convictions of defendants of possession of dextropropoxyphene with intent to distribute are set aside and these sentences are vacated; the case is remanded to the district court with instructions to enter a judgment of *710 guilty of possession of dextropropoxyphene.
CONVICTIONS AND SENTENCES FOR POSSESSION OF MARIJUANA WITH INTENT TO DISTRIBUTE AFFIRMED AS AMENDED; CONVICTIONS OF POSSESSION OF DEXTROPROPOXYPHENE WITH INTENT TO DISTRIBUTE ARE SET ASIDE AND SENTENCES ARE VACATED; REMANDED WITH ORDER.
NOTES
[1] In determining whether or not a ruling on a motion to suppress was correct, this Court is not limited to the evidence adduced at the hearing on that motion. Instead, we may consider all pertinent evidence given at the trial of the case. State v. Fleming, 457 So.2d 1232, 1235 (La.App. 1st Cir.), writ denied, 462 So.2d 191 (La.1984).
[2] The inadvertent discovery condition was recently deleted from the plain view doctrine. See Horton v. California, 496 U.S. 128, 136 and 140, 110 S.Ct. 2301, 2308 and 2310, 110 L.Ed.2d 112 (1990).