HIGGINBOTHAM, J.
 

 |2The defendant, Justin Blake Harris, was charged by felony bill of information on three counts: (1) possession of flurazep-am (a schedule IV controlled dangerous substance) in violation of La. R.S. 40:969(C); (2) possession of amphetamine (a schedule II controlled dangerous substance) in violation of La. R.S. 40:967(C); and (3) second offense possession of marijuana (a schedule I controlled dangerous substance) in violation of La. R.S. 40:966(E).
 
 See also
 
 La. R.S. 40:964. The defendant entered a plea of not guilty. The trial court denied the defendant’s motion to suppress the evidence and motion to quash the bill of information.
 

 After a trial by jury the defendant was found guilty as charged. As to each count, and to be served concurrently, the defendant was sentenced to four years imprisonment at hard labor, suspended, with four years of supervised probation under general conditions, and the following special conditions: payment of a $2,000.00 fine and costs over a forty-month period; payment of a $300.00 fee to the Indigent Defender Fund; payment of a $100.00 fee to the crime lab; payment of a $100.00 fee to the Judicial Expense Fund; payment of a $50.00 fee to the Drug Eradication Program; payment of a $55.00 monthly supervision fee; submission to random drug screening; and prohibition of presence at the Canterbury apartment complex in Sli-dell, Louisiana. The defendant now appeals, assigning error to the trial court’s denial of his motion to suppress the evidence and motion to quash the bill of information and to the restriction of his right to present a defense. For the following reasons, we affirm the convictions and sentences.
 

 STATEMENT OF FACTS
 

 On September 4, 2010, at approximately 10:00 p.m., Detective Luke Irwin of the Slidell Police Department was working an off-duty security detail for a nighttime loitering problem at the Canterbury apartment complex at 301 Spartan | ..¡Drive in Slidell, Louisiana. As he proceeded to patrol the area, Detective Irwin observed a Hyundai entering the parking lot. After a subsequent drive through the area, Detective Irwin noticed that the Hyundai vehicle was still sitting in the parking lot with the parking lights on and the engine running. Detective Irwin parked his vehicle and approached the Hyundai with a bright light shining on the driver’s side of the vehicle. He knocked on the driver’s window and asked to speak to the driver, identified as the defendant. The defendant partially opened the driver’s door and Detective Irwin requested that the defendant provide identification and step out of the vehicle.
 

 When the defendant complied with Detective Irwin’s request for him to step out of the vehicle, Detective Irwin noticed that the defendant had the smell of burnt marijuana on his person, and his eyes were reddened and slightly dilated. A female occupant was also asked to step out of the vehicle. Suspecting the defendant was impaired, Detective Irwin began to conduct field sobriety testing, including a horizontal and vertical gaze nystagmus test, noting extreme nystagmus and eye jerking.
 
 [1]
 
 
 *1040
 
 However, the defendant requested to discontinue the testing.
 

 The defendant was allowed to reenter the vehicle to retrieve his identification from a book bag. At that point, Detective Irwin observed a knife in plain view inside the vehicle, along with two pills in the cup holder area of the vehicle. After these items were removed from the vehicle, the defendant gave Detective Irwin permission to further search the vehicle. The detective recovered a partially defaced prescription pill bottle from the defendant’s book bag. The pill bottle contained suspected marijuana residue. After back-up officers arrived on the scene, further searching of the vehicle resulted in the recovery of more pills, the ^defendant’s identification, and a small pocketknife.
 
 [2]
 

 ASSIGNMENT OF ERROR NUMBER ONE
 

 In the first assignment of error, the defendant challenges the trial court’s denial of his motion to suppress the evidence. The defendant contends that the evidence was discovered pursuant to a second search of his vehicle, when he was already removed from the vehicle, handcuffed, and under the control of another officer. Citing
 
 Arizona v. Gant,
 
 556 U.S. 332, 129 S.Ct. 1710, 1723, 173 L.Ed.2d 485 (2009),
 
 [3]
 
 the defendant concludes that at the time of the search the interior of the automobile was no longer within his immediate control. The defendant argues that the trial court should have suppressed the pills discovered during the second search of the vehicle and the contents of the pill bottle. Finally, the defendant contends that since Detective Irwin was uncertain as to whether the prescription pills were discovered during the first or second search, all of the pills should have been suppressed.
 

 A defendant adversely affected may move to suppress any evidence from use at a trial on the merits on the ground that it was unconstitutionally obtained. La.Code Crim. P. art. 703(A). However, the State bears the burden of proof when a defendant files a motion to suppress evidence obtained without a warrant. La. Code Crim. P. art. 703(D). A trial court’s ruling on a motion to suppress the evidence is entitled to great weight, because the court had the opportunity to observe the witnesses and weigh the credibility of their testimony.
 
 State v. Jones,
 
 2001— 0908 (La.App. 1st Cir.11/8/02), 835 So.2d 703, 706,
 
 writ denied,
 
 2002-2989 (La.4/21/03), 841 So.2d 791. Reviewing courts should defer to the credibility findings of the trial court unless its findings are not adequately supported by reliable evidence.
 
 See State v. Green,
 
 94-0887 (La.5/22/95), 655 So.2d 272, 281. However, a trial court’s legal findings are subject to a
 
 de novo
 
 standard of review.
 
 See State v. Hunt,
 
 2009-1589 (La.12/1/09), 25 So.3d 746, 751.
 

 
 *1041
 
 The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution protect people against unreasonable searches and seizures. Measured by this standard, La. Code Crim. P. art. 215.1, as well as federal and state jurisprudence, recognizes the right of a law enforcement officer to temporarily detain and interrogate a person whom he reasonably suspects is committing, has committed, or is about to commit a crime.
 
 Terry v. Ohio,
 
 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968);
 
 State v. Robertson,
 
 97-2960 (La.10/20/98), 721 So.2d 1268, 1269;
 
 State v. Belton,
 
 441 So.2d 1195, 1198 (La.1983),
 
 cert. denied,
 
 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). Reasonable suspicion for an investigatory detention is something less than probable cause and must be determined under the specific facts of each case by whether the officer had sufficient knowledge of facts and circumstances to justify an infringement on the individual’s right to be free from governmental interference.
 
 Belton,
 
 441 So.2d at 1198. Pursuant to La.Code Crim. P. art. 215.1(C), if the law enforcement officer finds a dangerous weapon, he may take and keep it until the completion of the questioning, at which time he shall either return it, if lawfully possessed, or arrest such person.
 

 An exception to the warrant requirement exists when there is probable cause to search an automobile. The war-rantless search of an automobile is not unreasonable if there is probable cause to justify the search, without proving 1 (¡additional exigency, when the automobile is readily mobile because there is an inherent risk of losing evidence.
 
 See Maryland v. Dyson,
 
 527 U.S. 465, 466-67, 119 S.Ct. 2013, 2014, 144 L.Ed.2d 442 (1999) (per curiam). The determination of probable cause for arrest does not rest on the officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of the challenged action.
 
 State v. Landry,
 
 98-0188 (La.1/20/99), 729 So.2d 1019, 1020 (per curiam). In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer “that might well elude an untrained person.”
 
 State v. Huntley,
 
 97-0965 (La.3/13/98), 708 So.2d 1048, 1049 (per curiam) (quoting
 
 United States v. Cortez,
 
 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)). If a car is readily mobile and probable cause exists to believe it contains contraband, the Fourth Amendment permits the police to search the vehicle without more.
 
 Pennsylvania v. Labron,
 
 518 U.S. 938, 940, 116 S.Ct. 2485, 2487, 135 L.Ed.2d 1031 (1996) (per cu-riam).
 

 A search conducted pursuant to consent is a specifically established exception to the requirements of both a warrant and probable cause.
 
 State v. Owen,
 
 453 So.2d 1202, 1206 (La.1984). Additionally, under the “plain view” doctrine, police officers may seize evidence without a warrant if they are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if they have a lawful right of access to the object.
 
 Horton v. California,
 
 496 U.S. 128, 136-37, 110 S.Ct. 2301, 2307-08, 110 L.Ed.2d 112(1990).
 

 Law enforcement officers enjoy the same liberty possessed by every citizen to address questions to other persons.
 
 United States v. Mendenhall,
 
 446 U.S. 544, 553, 100 S.Ct. 1870, 1876, 64 L.Ed.2d 497 (1980). Police officers do not need probable cause or reasonable suspicion each time they attempt to converse |7with a citizen.
 
 State v. Neyrey,
 
 383 So.2d 1222, 1224 (La.1979).
 

 At the motion to suppress hearing in the instant case, Detective Irwin testified that he had over six hundred hours of narcot
 
 *1042
 
 ics-related post training that included training in drug identification, and he and his team had made nearly two thousand narcotics arrests throughout his career. On the night in question, Detective Irwin was working a 10:00 p.m. to 2:00 a.m. security detail in an effort to curtail loitering in the area. According to Detective Irwin, there had also been several narcotics-related arrests in the area. Detective Irwin testified that the defendant appeared startled when he approached the vehicle. After the defendant exited his vehicle, Detective Irwin noted the distinct odor of burnt marijuana. As they conversed, he further noted that the defendant’s breathing was quick and shallow and he moved his body, including his hands, in a jerking manner. Detective Irwin considered this a sign of nervousness. Thus, based on the defendant’s eyes, smell, and movements, Detective Irwin concluded that he was probably impaired.
 

 The defendant informed Detective Irwin that his identification was in his book bag, and he requested and received permission to retrieve the bag from the backseat of his vehicle. The defendant entered the vehicle and sat on the seat with one leg inside the vehicle and the other out. The defendant grabbed the bag from the backseat and placed it onto the center console. As the defendant’s left shoulder was turned toward the interior of the vehicle, Detective Irwin continued to observe and he heard jingling noises and saw the defendant’s hands moving around the console and cup holder area. Detective Irwin concluded that the defendant was concealing the bag, as he did not bring it out of the vehicle into the light to look for his identification. Detective Irwin repositioned himself, as his view was partially blocked, and as he walked around the door, he noticed a knife on the floor of the vehicle. As the defendant made a motion toward the cup holder, Detective Irwin ^ordered him to step back outside of the vehicle. The detective conducted a pat-down search of the defendant for more weapons, handcuffed the defendant, and positioned him at the rear of the vehicle. At this point, the female passenger was still standing outside of the vehicle. After Detective Irwin called for back-up assistance, he retrieved the knife and two pills that he saw in the cup holder. The defendant informed the detective that the pills did not belong to him and could possibly belong to his mother.
 

 Detective Irwin asked the defendant if any more weapons were in the vehicle, and the defendant said no and gave the officer permission to check the vehicle. Detective Irwin also again asked for the defendant’s identification and the defendant noted that it was still in the book bag. While looking in the book bag, Detective Irwin discovered a prescription bottle with a partially removed label. He noted that defaced prescription bottle labels were often a sign that the person in possession of the bottle is not the person who was prescribed the contents, or that the quantity or type of drug stored in the bottle is inconsistent with the original label. Detective Irwin noted suspected marijuana residue in the bottle based on the odor and the appearance of the green, leafy vegetable matter. When the detective inquired about the presence of the marijuana residue, the defendant requested an attorney and stated he did not want to answer any more questions and that the detective no longer had permission to search the vehicle. During cross-examination, Detective Irwin admitted that he did not know which pills were recovered before and after the defendant rescinded his consent to search the vehicle. Lieutenant Kevin Dupuy conducted further field sobriety testing on the defendant when he arrived at the scene as Detective Irwin completed the search of the vehicle.
 

 
 *1043
 
 The defendant also testified at the motion to suppress hearing. The defendant testified that when he first entered the apartment complex, he waited for |ghis girlfriend to meet him in the parking lot. When she entered his vehicle, she was upset and he tried to console her. Detective Irwin approached as they were conversing. The defendant stated that the detective asked him if he was “on something” and he responded negatively, informing the detective that he had a disability and an eye problem, specifically a nystagmus that causes his eyes to move. The defendant added that he had Attention Deficit Hyperactivity Disorder (“ADHD”) and was “kind of dyslexic.” The defendant stated that he was having a panic attack at the time of the police encounter, had not slept the whole week, and his girlfriend was pregnant and had low progesterone levels.
 

 The defendant explained that he initially patted his jeans when his identification was requested. The defendant further noted, “I live out of the car, and there is a lot of stuff in there.” According to the defendant, he was having difficulty finding his identification when he was fumbling through the console area of the vehicle. The defendant further stated that his eye condition was aggravated because the flashlight was shining in his eyes during field sobriety testing. Also, his panic attack (which included an increase in heart rate and shaky hands) caused him to have poor balance. The defendant stated that he told Detective Irwin that he did not have permission to search his vehicle. The defendant had difficulty recalling details and the sequence of events, reiterating that it was a traumatic night. According to his testimony, the defendant did not have an opportunity to explain the presence of the pills.
 

 In
 
 Arizona v. Gant,
 
 the three arrestees, all of whom had been handcuffed and secured in separate patrol cars before the officers searched the defendant’s vehicle, were outnumbered by five officers. Under those circumstances, the defendant clearly was not within reaching distance of his vehicle at the time of the search. Although the United States Supreme Court found that neither the possibility of access nor the likelihood of discovering offense-related evidence | inauthorized the search in that case, the Court specifically noted that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle. In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, the offense of arrest will supply a basis for searching the passenger compartment of an arrestee’s vehicle and any containers therein.
 
 Arizona v. Gant,
 
 556 U.S. at 343-44, 129 S.Ct. at 1719.
 

 Clearly, the detective’s approach of the defendant’s vehicle was proper and is not contested in this case. The defendant exhibited nervous behavior at the time of the encounter. The distinct odor of burnt marijuana emanated from the defendant as he exited the vehicle. We note that although the defendant was handcuffed and positioned at the rear of the vehicle, Detective Irwin was outnumbered and a weapon was observed in the vehicle (the seizure of which led to the plain-view observation of two pills). Arguably, the possibility of the defendant accessing the vehicle existed, justifying the search of the vehicle incident to the defendant’s arrest. At any rate, Detective Irwin clearly had probable cause to search the passenger compartment pursuant to the automobile exception to the warrant requirement, with or without the defendant’s consent.
 
 See State v. Allen,
 
 2010-1016 (La.5/7/10), 55
 
 *1044
 
 So.3d 756 (per curiam);
 
 State v. Waters,
 
 2000-0356 (La.3/12/01), 780 So.2d 1053, 1057-58 (per curiam). Accordingly, we conclude that
 
 Arizona v. Gant
 
 is factually distinguishable from this case. The evidence seized resulted from a lawful search, and we find that the trial court did not err in denying the motion to suppress. Assignment of error number one is without merit.
 

 ASSIGNMENT OF ERROR NUMBER TWO
 

 In the second assignment of error, the defendant contends that the trial court | ^abused its discretion in denying his motion to quash the bill of information as to count two, for possession of amphetamine. The defendant contends that he presented evidence at the motion to quash hearing showing that he had a prescription for dextroamphetamine. He concludes that since the State did not know whether the dextroamphetamine pill found in his vehicle was one of the pills that he validly obtained pursuant to a prescription, it was impossible for the State to refute his claim that he legally possessed the pill.
 

 Pursuant to La. Code Crim. P. arts. 532 and 535(A)(7), as amended by 2009 La. Acts No. 265, § 2, if an individual charged with a violation of the Uniform Controlled Dangerous Substances Law has a valid prescription for that substance, he has grounds to file a motion to quash the related charge. Additionally, La. R.S. 40:991, which was added by 2009 La. Acts No. 265, § 1 and became effective August 15, 2009, provides:
 

 A.An individual who claims possession of a valid prescription for any controlled dangerous substance as a defense to a violation of the provisions of the Uniform Controlled Dangerous Substances Law shall have the obligation to produce sufficient proof of a valid prescription to the appropriate prosecuting office. Production of the original prescription bottle with the defendant’s name, the pharmacist’s name, and prescription number shall be sufficient proof of a valid prescription as provided for in this Section.
 

 B. As used in this Section, “controlled dangerous substance” shall have the same meaning as provided in R.S. 40:961(7) and “prescription” shall have the same meaning as provided in R.S. 40:961(33).
 

 C. Any individual who claims the defense of a valid prescription for any controlled dangerous substance shall raise this defense before commencement of the trial through a motion to quash.
 

 Louisiana Revised Statutes 40:990(A) provides:
 

 It shall not be necessary for the state to negate any exemption or exception set forth in this part in any complaint, information, indictment or other pleading or in any trial, hearing, or other proceeding under this part, and the burden of proof of any such exemption or exception shall be upon the person claiming its benefit.
 

 Thus, the defendant bears the burden of proving that he possessed otherwise illegal | ipdrugs pursuant to a valid prescription.
 
 State v. Lewis,
 
 427 So.2d 835, 840 (La.1983) (on rehearing);
 
 State v. Ducre,
 
 604 So.2d 702, 708 (La.App. 1st Cir.1992). Louisiana Revised Statutes 40:961(33) provides the definition of a prescription as follows:
 

 “Prescription” means a written request for a drug or therapeutic aid issued by a licensed physician, dentist, veterinarian, osteopath, or podiatrist for a legitimate medical purpose, for the purpose of correcting a physical, mental, or bodily ailment, and acting in good faith in the usual course of his professional practice.
 

 When a trial court denies a motion to quash, factual and credibility determina
 
 *1045
 
 tions should not be reversed in the absence of a clear abuse of the trial court’s discretion.
 
 See State v. Odom,
 
 2002-2698 (La.App. 1st Cir.6/27/03), 861 So.2d 187, 191,
 
 writ denied,
 
 2003-2142 (La.10/17/03), 855 So.2d 765. However, a trial court’s legal findings are subject to a
 
 de novo
 
 standard of review.
 
 See State v. Smith,
 
 99-0606 (La.7/6/00), 766 So.2d 501, 504.
 

 At the motion to quash hearing, Dr. Clinton Harry Sharp, III, a family medicine physician, testified that he treated the defendant from October 17, 2001, to November 28, 2006. Dr. Sharp diagnosed the defendant with ADHD and anxiety disorder. Dr. Sharp stated that he never observed or treated the defendant for nys-tagmus, but confirmed prescribing dex-troamphetamine for the defendant on his October 17, 2001 visit. The defendant had already been taking that drug as prescribed by other physicians. Dr. Sharp initially prescribed dosages of 5 milligrams, twice a day, and at one point increased the dosages to 7.5 milligrams, still twice a day, and ultimately up to 10-milli-grams, twice a day. At one point the defendant requested a decrease in dosage and later, on the final visit taking place in November of 2006, went back to 10-milli-gram dosages. After that final visit, one more prescription for sixty 10-milligram pills, a thirty-day supply, was given to the defendant on January 4, 2007.
 

 Dr. Sharp testified that the pills were to be taken as scheduled, although lasóme patients would skip certain days and some were even known to have functioned years without taking the medication. However, Dr. Sharp noted that his history with the defendant always included prescriptions on a twiee-a-day basis. When questioned regarding the circumstances of the termination of treatment, Dr. Sharp was uncertain but noted that the defendant had financial difficulties and was “on and off of Medicaid,” and the doctor was not a Medicaid provider.
 

 According to Walgreens’ pharmacy records, the defendant filled the November 28, 2006 prescription on that same date and previous prescriptions also had been filled within one or two days. Based on the evidence introduced, on January 10, 2007, six days after filling the final prescription written by Dr. Sharp on January 4, 2007, the defendant filled a final prescription for the dextroamphetamine at a different Walgreens location. Dr. Sharp acknowledged that patients were allowed to keep medication as long as they wished but added that it should be kept in the prescription bottle and discarded upon expiration.
 

 In denying the motion to quash, the trial court noted the defendant routinely filled prescriptions monthly or within a few days of that time period, consistent with the numbers of days supplied if taken as directed. Thus, the trial court concluded the defendant did not have a valid prescription for the dextroamphetamine seized September 4, 2010, several years after the final January 10, 2007 prescription. We further note that the testimony presented at the motion to suppress hearing indicated the defendant claimed the drugs were not his at the time of the offense. The defendant had the burden of proving that he had a valid prescription for the drugs seized on the date in question. The defendant presented evidence to show he filled a series of valid prescriptions for the same drug charged in count two, dextroamphetamine, in accordance with the number of days supplied during a time period that began in 2001 and ended years before the instant offense. The trial court reasonably found this evidence insufficient to prove that the 114defendant had a valid prescription for the dextroamphetamine seized in this case. Based on our review of the record, we find
 
 *1046
 
 the trial court did not err or abuse its discretion in denying the motion to quash. The second assignment of error lacks merit.
 

 ASSIGNMENT OF ERROR NUMBER THREE
 

 In the third assignment of error, the defendant argues that the trial court erred in ruling that he could not present the evidence regarding a prescription for dextroamphetamine. The defendant argues La. R.S. 40:991 does not provide that a denial of the motion to quash prohibits introduction of a defense based upon the basis asserted in the motion to quash. The defendant further argues that if the statute were interpreted to deny a defendant the right to present a defense at trial, the statute would be rendered unconstitutional. The defendant concludes that he was deprived of his right to a fair trial and his right to present a defense.
 

 A criminal defendant’s right to present a defense is guaranteed by the Sixth Amendment of the United States Constitution and Article I, § 16 of the Louisiana Constitution. However, constitutional guarantees do not assure the defendant the right to the admissibility of any type of evidence, only that which is deemed trustworthy and has probative value.
 
 State v. Governor,
 
 331 So.2d 443, 449 (La.1976). “Relevant evidence” is evidence that has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. La.Code Evid. art. 401. The trial judge, in deciding the issue of relevancy, must determine whether the evidence bears a “rational” connection to the fact at issue in the case.
 
 State v. Williams,
 
 341 So.2d 370, 374 (La.1976). Except as limited by the Code of Evidence and other laws, all relevant evidence is admissible and all irrelevant evidence is inadmissible.
 
 See
 
 La.Code Evid. art. 402. Although relevant, evidence may nonetheless be excluded, if the probative value is substantially 11Boutweighed by its prejudicial effect.
 
 See
 
 La.Code Evid. art. 403. Ultimately, questions of relevancy and admissibility are discretionary rulings for the trial court, and its determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion.
 
 State v. Duncan,
 
 98-1730 (La.App. 1st Cir.6/25/99), 738 So.2d 706, 713.
 

 In this case, after denying the defendant’s motion to quash the bill of information as to count two, the trial court further ruled that the defendant could not present the evidence during the trial regarding his past prescriptions for dextroamphetamine. Having already found the evidence at issue was insufficient to meet the defendant’s burden of proof as to his possession of a valid prescription for the dextroamphet-mine seized in this case, and thus, did not establish a defense to that charge, we conclude that the trial court properly excluded the evidence and did not thereby curtail the defendant’s right to present a defense or confront his accusers. Not only is the evidence at issue irrelevant, the probative value of the evidence was substantially outweighed by the danger of confusing and misleading the jury. We find no clear abuse of discretion in the trial court’s relevancy and admissibility rulings as to the evidence at issue. The third assignment of error lacks merit.
 

 CONCLUSION
 

 For the outlined reasons, the defendant’s convictions and sentences are affirmed.
 

 CONVICTIONS AND SENTENCES AFFIRMED.
 

 [1]
 

 . According to his testimony, Detective Irwin has certifications in administering field sobriety tests.
 

 [2]
 

 . The pills recovered were described as one blue capsule with "Mylan 4430” imprinted on it (identified as Schedule IV flurazepam), one peach round tablet with "95310 B” imprinted on it (identified as Schedule II dexedrine), two round tablets with "PM” imprints (identified as over-the-counter Excedrin PM), and two blue caplets with an "L43I” imprint (identified as over-the-counter diphenhydra-mine).
 

 [3]
 

 . In
 
 Arizona v. Gant,
 
 the search of the defendant’s vehicle following his arrest for driving with a suspended license was held unreasonable where the defendant and the two other suspects were handcuffed and secured in separate patrol cars before the officers conducted the search. The United States Supreme Court held that the police may search a vehicle incident to a recent occupant’s arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search
 
 or
 
 it is reasonable to believe the vehicle contains evidence of the offense of arrest.
 
 Arizona v. Gant,
 
 556 U.S. at 349-51, 129 S.Ct. at 1723. (Emphasis added.)